UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*****************************************
                                              *

| | |
|---|---|
| APRIL BROCKEBERRY * | |
| * | |
| * | CIVIL ACTION NO. |
| Plaintiff, * | |
| * | |
| v. * | |
| * | |
| ANSONIA HOUSING AUTHORITY, * | |
| * | |
| * | October 17, 2014 |
| TROY WHITE, * | |
| Executive Director * | |
| of the ANSONIA HOUSING AUTHORITY * | |
| * | |
| Defendants * | |
| * | |

*****************************************
                                              :

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

## I.      INTRODUCTION

On September 8, 2014, defendants illegally and improperly terminated plaintiff April

Brockenberry's participation in the Section 8 Housing Choice Voucher (HCV) program

administered by defendant Ansonia Housing Authority under Section 8 of the U.S. Housing Act

of 1937, 42 U.S.C. §1437f.  Defendants terminated Ms. Brockenberry's participation for fraud

based on a constitutionally-deficient hearing process and without proof she had received any

Section 8 assistance for which she and her family were not eligible. Without Section 8

assistance, Ms. Brockenberry has lost her three bedroom apartment in Ansonia and now rents a

single room, in a private home, apart from her children.  She seeks preliminary injunctive relief

enjoining defendants from depriving her of participation in the Section 8 HCV program in

violation of the United States Housing Act of 1937, 42 U.S.C. § 1437f and the Due Process

Clause of the Fourteenth Amendment to the United States Constitution.

## STATUTORY AND REGULATORY SCHEME

The Section 8 HCV program is the federal government's major program for assisting low income families, elderly persons, and persons with disabilities to afford decent, safe, and sanitary housing in the private market. Congress created the Section 8 rent subsidy program under the Housing and Community Development Act of 1974 which amended the United States Housing Act of 1937. The program is codified at 42 U.S.C. § 1437f. The United States Department of Housing and Urban Development (HUD) has promulgated regulations implementing the program at 24 C.F.R. Part 982.

The purpose of the Section 8 housing subsidy programs is to aid "lower income families in obtaining a decent place to live and of promoting economically mixed housing . . . ." 42 U.S.C. § 1437f(a). The federal government, through the United States Department of Housing and Urban Development (HUD), allocates funds to local public housing agencies (PHAs) throughout the nation to administer the Section 8 HCV program. 42 U.S.C. § 1437f(b). Housing authorities administering a Section 8 HCV program must adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements. 24 C.F.R. § 982.54(a). This plan, known colloquially as a "Section 8 Admin Plan" must be followed by the housing authority. Id. at § 982.54(c).

Section 8 HCV program participants are selected from waiting lists maintained by the PHA. 24 C.F.R. § 982.202. Under the implementing regulations, local PHAs enter into Housing Assistance Payments (HAP) contracts with owners of existing housing on behalf of participant families, and agree to subsidize the rental payment in an amount based on the family's income. 24 C.F.R. § 982.311

2

Section 8 HCV participants never pay less than 30 percent of adjusted monthly income toward the rent, and the administering PHA  pays the balance, pursuant to the HAP contract with the owner. Once a family has been accepted into the Section 8 HCV Program, the family has a protected property interest in its participation, *Edgecomb v.Housing Authority of the Town of Vernon*, 824 F.Supp. 312, 315 (D. Conn. 1993) which may only be terminated in accordance with the requirements of federal law and basic principles of due process. Id. Under the regulations implementing the Section HCV program, there are several mandatory grounds for termination, 24 C.F.R. § 982.552(b), not applicable to this case.  There are also 11 permissible grounds for termination, 24 C.F.R. § 982.552(c) including "[i]f any member of the family has committed fraud, bribery, or any other corrupt or criminal act in connection with any Federal housing program." 24 C.F.R. § 982.552(c)(1)(iv).

HUD has not defined fraud in 24 C.F.R. Part 982.  However, it has defined the term in other contexts, including in regulations governing Section 8 fraud recoveries. In that context, HUD defines fraud and abuse as " . . .a single act or pattern of actions: (1) That constitutes false statement, omission, or concealment of a substantive fact, made with intent to deceive or mislead; and (2) That results in payment of section 8 program funds in violation of section 8 program requirements." 24 C.F.R § 792.103 *See also* Section 8 Housing Choice Voucher Program Guidebook, (7420.10g) Chapter 22, page 22-1, stating that "fraud" involves a "false statement, omission, or concealment of a substantive fact" and "fraud results in the payment of Housing Choice Voucher Funds in violation of program requirements."

A PHA is required to adopt written procedures for conducting informal hearings when it proposes to terminate assistance for a participant family and to include these procedures in its Section 8 Admin Plan. 24 C.F.R. § 982.555(e)(2).  These procedures must include notice to the

family and an informal hearing conducted by any person designated by the PHA other than the person who made or approved the decision or a subordinate of that person. 24 C.F.R. § 982.555(e)(4).  The family is entitled to present evidence and question all witnesses. 24 C.F.R. § 982.555(e)(5).  The person who conducts the hearing must issue a written decision stating the reasons for the decision.  Factual determinations must be based on a preponderance of the evidence presented at the hearing. 24 C.F.R. §982.555(e)(6).

A PHA is not bound by the hearing officer's decision if it is contrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law. 24 C.F.R. §982.555(f).

## II.   FACTUAL ALLEGATIONS

Plaintiff April Brockenberry is a single mother,  now  living in a single room in New Haven Connecticut.  In December 2012, she became a participant in the Section 8 HCV program administered by the defendant AHA.  She had been on the AHA Section 8 waiting list for about 7 (seven) years.  At the time she became a participant, and throughout her participation, Ms. Brockenberry shared joint guardianship of her two minor children, Dontell and Donisha, with their paternal grandmother.  Under the co-guardianship order, issued by the New Haven Regional Children's Probate Court in 2008, primary guardianship is with the paternal grandmother, Jannie Mae Glover, who lives in New Haven, Connecticut and the children are directed to live with Ms. Glover Monday through Friday to attend public school in New Haven. Ms. Brockenberry has overnight visitation on every other weekend and such other reasonable visitation as she and Ms. Glover should arrange.  The children, who are teen-agers attending high school in New Haven, spend most weekends with their mother except for weekends when participating in school activities.

As the children's co-guardian, Ms. Brockenberry listed the children as members of her

Section 8 household and was issued a three-bedroom voucher.  She leased a three bedroom apartment at 94 N. Cliff Street in Ansonia, Connecticut where she lived from December 2012 until August 2014 with her adult daughter, Whitney Brockenberry (also a member of the Section 8 household), and Dontell and Donisha.  Ms. Brockenberry's rent for the unit at 94 N. Cliff Street was $1,250.  Her share of this rent was $0, based on her lack of a source of income. Defendant AHA made monthly rent subsidy payments to the owner totaling the full rent.

At the time she became a participant, Ms. Brockenberry provided AHA with all information requested, including birth certificates for the minor children showing her relationship as the children's mother.  Defendant AHA asked no questions of Ms. Brockenberry about legal custody or the percentage of time that the children would live in her household. There is no prohibition, in the federal regulations, or in AHA's Section 8 Admin Plan, excluding children as household members when the head of household does not have "primary" custody. Nor is there any requirement in the federal regulations or AHA's Section 8 Admin Plan that minor children reside in Section 8 housing any minimum percentage of time.

In May 2014, AHA received a hand-written, anonymous, letter stating Ms. Brockenberry "was committing fraud."  The letter stated that the children did not live with Ms. Brockenberry and that they were living with the paternal grandmother in New Haven.

After receiving the letter, Aida Davis, an AHA Section 8 worker, sent a letter to Ms. Brockenberry asking her to bring in school records.  When Ms. Brockenberry received the letter, she contacted Ms. Davis to inquire as the reason for the requested documentation.  Ms. Davis told her about the anonymous letter.  When Ms. Brockenberry explained the co-guardianship situation, under which the minor children reside with both Ms. Brockenberry and the paternal

grandmother in New Haven, she was told by Ms. Davis she was committing fraud because the children's so-called "primary" residence was in New Haven.

AHA also requested that the New Haven Public Schools (NHPS) provide school enrollment information on the two minor children.[1]  On June 12, 2014, NHPS faxed to AHA the requested school enrollment forms for Dontell and Donisha.  These records showed  the children's' "home address," for school enrollment purposes, is the paternal grandmother's address on Whalley Avenue in New Haven.  The NHPS school enrollment forms listed Ms. Brockenberry as co-guardian and as an emergency contact.

The next day, June 13, 2014, AHA received a second set of these same NHPS school enrollment forms.  This second set of school enrollment forms were stamped as "received" on June 13 on the face of each document.  The school enrollment forms that were stamped received on June 13 were identical to the forms faxed by NHPS the day before  except that the "home address" on the school enrollment forms received on June 13 had been altered to list Ms. Brockenberry's Ansonia address as the children's "home address."  The altered NHPS school enrollment forms were accompanied by copies of the 2008 New Haven Regional Probate Court orders plainly showing that guardianship of the children is shared, that the children's primary guardian is Ms. Glover, and that the children are required to live with the paternal grandmother Monday through Friday to attend school in New Haven.

Upon receiving the altered NHPS school enrollment forms on June 13, AHA immediately issued a Notice of Termination to Ms. Brockenberry for "program violation."  The Notice of Termination was dated June 13, 2014 and effective date for the termination was July 1, 2014.

---

[1] AHA used a form that Ms. Brockenberry signed at the time her admission into the Section 8 program that authorized AHA to obtain information relating to her eligibility for Section 8 assistance.

After counsel requested that the Notice be more specific as to the factual and legal basis, AHA

issued a Notice of Termination (Revised) to Ms. Brockenberry dated July 11, 2014 and extended

the effective date until August 1.  The revised termination notice stated that the termination was

for fraud based on the claim that Ms. Brockenberry altered the NHPS school enrollment records:

> "Other: April had not been truthful of her children's residence. We request that she bring
> in documentation (enrollment verification form) from the school her children were
> attending. Ansonia Housing Authority simultaneously faxed a request of (sic) the same
> information to the New Haven board of Education.  We received the same letters from
> April and the school, however, April's form was altered to display a different address
> than that which was truly on file with the New Haven Board of Education. April
> fraudulently altered official verification forms, thus violation family obligation (sic)
> **24 CFR 982.552(c)**. Ansonia Housing Authority will terminate family assistance if any
> family member has committed fraud, bribery, or any corrupt or criminal act in connection
> with any federal housing program, amongst other violations."

The June 13, 2014 and July 11, 2014 Notice(s) of Termination are attached to the Complaint as

Exhibit A and Exhibit B.

Ms. Brockenberry timely requested a hearing to challenge the proposed termination under

24 C.F.R. § 982.555.  Fearing that she might become responsible for the full rent for her

apartment, she moved out of 94 N. Cliff Street on August 1, 2014 and went to stay with her sister

in Meriden until there was a decision on her Section 8 assistance.

The termination hearing was held on August 18, 2014, at the AHA office. The AHA-

designated hearing officer was Robert Henderson, the employee in charge of defendant AHA's

low income public housing program.  Ms. Brockenberry was represented by counsel.  The only

witness for defendant AHA was Jake Scaife, AHA Housing Choice Manager, who had no first

hand knowledge about the underlying facts.  He testified about Ms. Davis' investigation. He

testified about the receipt of the hand-written anonymous letter, Ms. Davis' letter to Ms.

Brockenberry asking for school enrollment information, the faxed documents received from the

NHPS, and the identical, but altered, documents hand-delivered to AHA the next day.  Mr.

Scaife presented the package of documents relating to that investigation, including the written request for school forms sent to Ms. Brockenberry, the guardianship orders for the two children, and the two sets of school enrollment forms, i.e. the set faxed by the NHPS and the set hand-delivered to AHA the next day.

The hearing officer denied Ms. Brockenberry's counsel the opportunity to question Mr. Scaife about anything other than AHA's claim that Ms. Brockenberry altered NHPS school records. The hearing officer would not allow counsel to ask Mr. Scaife any questions about relevance of the school enrollment records to Ms. Brockenberry's eligibility for Section 8 assistance, AHA's lack of reliance on the altered NHPS school enrollment forms, or whether defendant AHA paid any assistance for which Ms. Brockenberry was ineligible to demonstrate the absence of any fraud. The hearing officer was only interested in determining if Ms. Brockenberry altered the NHPS school enrollment forms. The hearing officer justified his limits on cross examination of Mr. Scaife by stating that Section 8 hearings were "informal" in nature.

In her testimony, Ms. Brockenberry agreed that the school enrollment documents were altered – that was plain on the face of the documents—but denied she altered the documents. She testified that, because she lacked transportation, she relied on a boyfriend to drive her to New Haven to pick up requested school documents and she asked that boyfriend to deliver to AHA the school documents and the guardianship orders which she had retrieved from the New Haven Probate Court. She testified the NHPS school enrollment documents were unaltered prior to giving the documents to this man for delivery. The documents were not delivered until the next day.

She further testified that the boyfriend who drove her to New Haven to obtain the documents requested by AHA was a man with whom she had been having an abusive

relationship.  Indeed, at the time she asked him to drive her to New Haven, she was living
temporarily in a "safe house" in Shelton.  Her domestic violence worker from BH Cares in
Ansonia accompanied her to the hearing and confirmed where she was living in a safe house in
Shelton on June 13.  Ms. Brockenberry testified that she asked her boyfriend to bring the forms
to AHA because she needed to get back to the safe house.  She did not know at the time – did not
know until she saw the anonymous handwritten letter at the hearing -- that her boyfriend was the
person who had sent the letter accusing her of fraud.

The hearing concluded after an hour.  Mr. Scaife offered no testimony or other evidence
contradicting Ms. Brockenberry's testimony that she did not alter, or even deliver,  the
documents brought to AHA on June 13.  He also offered no evidence of fraud; specifically:

1)     evidence demonstrating AHA's reliance on the altered school records to provide
Section 8 assistance for the Brockenberry family;

2)     evidence demonstrating that the children's' address on the NHPS school
enrollment forms was material to Ms. Brockenberry's eligibility for Section 8 assistance; and

3)     evidence demonstrating Ms. Brockenberry had received any Section 8 assistance
for which she and her children were not entitled.

On September 8, 2014, AHA sent to Ms. Brockenberry's counsel, a one-page decision
issued by the hearing officer on September 2 "finding in favor of the Ansonia Housing Authority
Section 8 Department's decision to terminate the assistance [April Brockenberry]."  The
decision, written in the form of a letter from the hearing officer to Mr. Scaife,  stated three
"reasons" for upholding the termination of Ms. Brockenberry's Section 8 participation:

"1.  24CFR 982.552 section (C)(1)(iv) states grounds for denial or termination of
assistance exists if any member of the family has committed fraud, bribery, or any
other corrupt or criminal act in connection with any Federal housing program.

2.   Both the Ansonia Housing Authority and Ms. Brockenberry agree that the documents in question are fraudulent.

3.   Ms. Brockenberry states she authorized another individual to bring the requested documents to the Ansonia Housing Authority, and that this person altered the documents without her knowledge or consent. The individual named was not present at the hearing.  *Three staff members report seeing only Ms. Brockenberry deliver any documents at any time to the Ansonia Housing Authority."*  (emphasis added)

The emphasized language demonstrates that the hearing officer relied on evidence outside the record; specifically, statements by three staff members who did not appear at the hearing and who were not made available for cross examination.  Such reliance irreparably compromised the hearing officer's impartiality; speaking *ex parte* to one or more AHA employees which is the only way he would have learned about their claim.

By letter from her counsel dated September 12, 2014, Ms. Brockenberry requested that defendant White vacate the decision of the AHA-designated hearing officer as contrary to federal and constitutional law as required by 24 C.F.R. 982.555(f).  A copy of that letter is attached to the Complaint as Exhibit E.  On September 30, 2014, counsel for defendant AHA responded, ratifying the decision to terminate Ms. Brockenberry's Section 8 assistance.  Defendants knew of this termination decision; they had the opportunity, and legal authority, to instruct or command that a different decision be made.  Defendants were familiar with the hearing officer's decision and, when asked to reconsider it, defendants chose not to vacate it, but rather to support it.

### III.   THIS COURT SHOULD PRELIMINARILY ENJOIN  DEFENDANTS FROM TERMINATING THE PLAINTIFF'S SECTION 8 HOUSING ASSISTANCE PAYMENTS IN VIOLATION OF FEDERAL LAW AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v.*

*Natural Resources Defense Council,* 555 U.S. 7, 20 (2008).  Preliminary relief of the kind sought here is standard practice in this Circuit in cases asserting rights with respect to the receipt of public benefits.  *See, e.g., Briggs v. Bremby,* 2014 WL 1246696 (D. Conn. March 24, 2014); *M.K.B. v. Eggleston*, 445 F.Supp. 2d 400 (S.D.N.Y. 2006); *Reynolds v Giuliani*, 35 F. Supp. 2d 331, 338 (S.D.N.Y. 1999); *Morel v. Giuliani*, 927 F. Supp. 622 (S.D.N.Y. 1995).  The plaintiff easily meets all four prongs of the standard.

A.  <u>PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS NOT GRANTED</u>

Ms. Brockenberry currently works at the Walgreens on Saw Mill Road in West Haven earning $9.25 per hour and receiving only part time hours.  She has only had that job since July.  Prior to working at Walgreens she was unemployed for several years.

The full contract rent for her family's apartment in Ansonia was $1,250 per month, an average cost for a three bedroom unit on the private market.  Because Ms. Brockenberry had no source of income, AHA paid the entire rent to the owner.  After moving from N. Cliff Street in August, Ms. Brockenberry stayed for awhile at her sister's house in Meriden.  However, the transportation costs to work in West Haven were prohibitive, so she was forced to find housing closer to her work.  Given her low income, she could only afford room in a home in the Newhallville section of New Haven.  She pays $416 a month for that rent which is nearly 50% of her income.

Ms. Brockenberry's adult daughter Whitney, who was also part of her Section 8 household, is now living with relatives in New Haven.  She is a full time student attending a trade school.  Ms. Brockenberry's minor children, Donnell and Donisha, have been unable to stay with her or even visit with her since her Section 8 assistance was terminated.  She only sees them periodically at the paternal grandmother's home and at school activities.

Without an injunction reinstating her Section 8 status, plaintiff is not only spending nearly 50% of her monthly income for rent, but she also has to pay child support for the children and pay for food, transportation, clothing and other necessities for herself.  This will be impossible to achieve considering her limited income. The likelihood of Ms. Brockenberry defaulting on some of these payments, including her rent, is extremely great, creating a serious risk that she will lose even the single room she currently rents.  Her risk of homelessness, and the scarcity of decent, affordable, housing on the private market, constitutes irreparable harm, particularly to her young children, and is sufficient to justify preliminary relief.  *See Mitchell v. United States Department of Housing and Urban Development*, 569 F. Supp. 701 (N.D. Cal. 1983); *U.S. v. Robinson*, 721 F.Supp. 1541 (D.R.I. 1989)(denying civil forfeiture of a federally subsidized apartment in party because such loss would irreparably harm the tenant and her family).

      B.      <u>THERE IS A LIKELIHOOD THAT PLAINTIFFS WILL PREVAIL ON THE MERITS OF HER CLAIM THAT DEFENDANTS' TERMINATION OF  HER SECTION 8 ASSISTANCE VIOLATED HER RIGHTS UNDER FEDERAL LAW AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.</u>

"A subsidy for housing through the Section 8 program, like other forms of public assistance benefits, is a property interest of the recipient."  *United States v. Robinson*, 721 F.Supp. at 1542.  *See Edgecomb v. Housing Authority of the Town of Vernon* 824 F.Supp. 2d 312, 314 (D.Conn. 1983)(*citing Robinson*); *Joy v. Daniels,* 479 F.2d 1236 (4th Cir.1973) (holding that a tenant in a privately-owned, federally-subsidized housing project has a property interest in the tenancy beyond the end of the lease term); *Swann v. Gastonia Housing Authority,* 502 F.Supp. 362, 365 (W.D.N.C.1980) (finding that Section 8 tenants have a property interest in

their tenancy, under analytical criteria set forth by Supreme Court in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

Because participation in the Section 8 HCV program implicates a protected property interest, federal law prescribes specific procedures for the termination of assistance.  24 C.F.R. § 982.550 *et. seq*.  Central to these  procedures is the opportunity for a pretermination hearing.  24 C.F.R. § 982.55.  Whether a PHA's hearing procedures comply with applicable federal regulations must be judgment by the due process requirements of *Goldberg v. Kelly*, 397 U.S. 254, 269-70 (1970) *See Edgecomb v. Housing Authority of Vernon*, 842 F.Supp. at 314. "[T]he pretermination hearing has one function only:  to produce an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." *Goldberg v. Kelly*, 397 U.S. at 267.

### 1. <u>Defendants' Denial of Right to Cross Examine Witnesses</u>

Among the procedures mandated by federal and constitutional law in connection with the termination of public benefits is the right to cross examine any witnesses upon which the agency relies and the related right to a decision based solely on the evidence presented at the hearing. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. . . Welfare recipients must be given an opportunity to confront and cross-examine the witnesses relied on by the department. *Goldberg*, 397 U.S. at 269, 270.  *See also Escalera v New York Housing Authority*, 425 F.2d 853, 862 (2d Cir. 1970) *cert denied* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). ( Second Circuit stating, in a case involving the loss of subsidized housing assistance, that "[d]enying the tenant the opportunity to confront and cross-examine persons who supplied information upon

which the housing authority's action is grounded is improper.")  This right is mandated by the federal regulations governing the termination of Section 8 benefits. *See* 24 C.F.R. § 982.555(e).  Ms. Brockenberry was denied the right to question the three witnesses who "report[ed] seeing only Ms. Brockenberry deliver any documents at any time to the Ansonia Housing Authority."  These witnesses, who directly contradicted Ms. Brockenberry's testimony that she did not deliver the altered NHPS school enrollment forms to AHA, did not testify at the hearing and, accordingly, were never made available to Ms. Brockenberry for questioning.  The hearing officer's failure to produce these witnesses at the hearing for questioning denied Ms. Brockenberry the right to confront these witnesses.  *See Edgecomb v. Housing Authority of Vernon*, 842 F.Supp. 312. (ordering reinstatement of Section 8 voucher participant because hearing officer's decision based solely on hearsay contradicted by the participant).

The hearing officer's discussion with these witnesses also constituted an *ex parte* communication between himself and defendants' employees which denied Ms. Brockenberry constitutionally-protected right to a conclusion that rests solely on "the legal rules and the evidence adduced at trial." *Goldberg*, 397 U.S. at 271.  *See also* 24 C.F.R. § 982.555(e)(6) ("Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence *presented at the hearing*" (emphasis added).  The hearing officer's post-hearing *ex parte* communications with third party witnesses, all employees of defendant AHA, also calls into question his impartiality.

In addition, Ms. Brockenberry was denied the right to ask questions of Jack Scaife, the only AHA witness testifying at the hearing.  Questioning of Mr. Scaife was improperly limited by the hearing officer to questions about the alteration of the NHPS school records.

For this reasons alone, plaintiff will prevail on the merits of her claim that she was denied due process with respect to the termination of her Section 8 assistance.

### 2.   **Defendants' Failure to Issue a Proper Notice Of Decision**

In addition to written notice of the pertinent allegations prior to the informal hearing, *Goldberg* also requires that the decision maker state the reasons for its determination and indicate what evidence it considered in reaching its conclusion, although the decision need not amount to a comprehensive judicial opinion with formal findings of fact and legal conclusions. *See Goldberg,* 397 U.S. at 271. See also  24 C.F.R. § 982.555(e)(6) ([t]he person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision.  Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing.")

In *Edgecomb*, the hearing officer's conclusory statement that "there was a preponderance of evidence that indicated that a Family member did engage in such drug related activity while on the Section 8 program which is a violation of 24 C.F.R. § 882.118" was held to be constitutionally deficient.  The court ruled that the decision "did not state the elements of fact or law on which the decision to uphold the termination was based" and "failed to specify the reasons for [the hearing officer's] determination or indicate the evidence on which it rested." 824 F.Supp at 316.  Such is the case herein.  The hearing officer's decision is less than a page and takes the form of a letter to Jake Scaife from the hearing officer. In the one-page letter, the hearing officer states he "reviewed the documents presented and the testimony of those involved."  Nowhere does he describe the "documents presented" or state what "testimony of those involved" which he reviewed.  The latter is particularly important given that the decision shows he relied on testimony not presented at the hearing.

The hearing officer's "reasons" only underscore the insufficiency of the decision. The first reason is a recitation of the language in 24 C.F.R. § 982.552(c)(1)(iv) allowing the termination of Section 8 assistance for fraud in connection with a federal Housing program. Nowhere in the decision does the hearing officer state the elements of fraud that motivated his (apparent) conclusion that Ms. Brockenberry committed fraud. *See Driver v. Housing Authority of Racine County*, 289 Wis.2d 727, 741-42 (Wis. Ct. App. 2006)("Both decision letters from HARC fall appallingly short of the mark. They contain no facts related to the incidents. . . Moreover, they do not state the elements of law motivating the court's conclusion. They cite no policy, regulation, or other authority indicating what a "family obligation" is or how the plaintiffs' acts and omissions fail to meet the pertinent legal requirements.")

The second reason given by the hearing officer is that "[b]oth the Ansonia Housing Authority and Ms. Brockenberry agree that the documents in question are fraudulent." This statement fails to identify the "documents in question" and misstates the position of Ms. Brockenberry as presented at the hearing. Ms. Brockenberry agreed that the NHPS school enrollment forms had been altered. But she did not describe any documents as "fraudulent."

The last reason given by the hearing officer was "Ms. Brockenberry states she authorized another individual to bring the requested documents to the Ansonia Housing Authority, and that this person altered the documents without her knowledge or consent. The individual named was not present at the hearing.[2] Three staff members report seeing only Ms. Brockenberry deliver any documents at any time to the Ansonia Housing Authority." The decision does not identify

---

[2] The "individual named" was not present at the hearing because, as stated above, the individual was someone who had abused Ms. Brockenberry for which abuse she had received the assistance of a domestic violence worker from BH Cares in Ansonia. That person was present at the hearing and testified to this effect before the hearing officer.

these three witnesses nor state how the hearing officer came to hear their "report" about Ms. Brockenberry's delivery of documents to AHA.

The hearing officer's decision is patently insufficient to meet the constitutional standard for enunciated in *Edgewood*.

### 3.   Defendants' Failure To Produce Evidence of Fraud Justifying Termination of Section 8

Defendants also failed to produce evidence sufficient to justify the termination of plaintiff's Section 8 subsidy based on fraud.  As a matter of constitutional law, the housing authority has the burden of persuasion at an administrative hearing to show the basis for termination of a Section 8 participant's housing subsidy.  *See  Basco v Machin*, 514 F.3d 1177, 1182, 1183-84 (11th Cir.2008)(*citing Goldberg v Kelly* at 514 F.2d at 1182, n. 7). The NHPS school enrollment records AHA presented at Ms. Brockenberry's termination hearing were AHA's sole evidence of fraud.  The only question the hearing officer had for Ms. Brockenberry was "did you alter the school records?"

However wrongful such action may be, fraud is more than altering a document.  Under 24 C.F.R  § 792.103, "[f]raud and abuse means a single act or pattern of actions: (1) That constitutes false statement, omission, or concealment of a substantive fact, made with intent to deceive or mislead; and (2) That results in payment of section 8 program funds in violation of section 8 program requirements.  *See also* Section 8 Housing Choice Voucher Program Guidebook, (7420.10g) Chapter 22, page 22-1, stating that "fraud" involves a "false statement, omission, or concealment of a substantive fact" and "*fraud results in the payment of Housing Choice Voucher Funds in violation of program requirements*." (emphasis added).  This definition is consistent with the everyday understanding of the word fraud.  It contemplates that the perpetrator of the fraud will either gain a financial benefit from their actions or impose a

financial burden on the victim of the fraud. *See Mirriam Webster Online*, http://www.merriam-webster.com/dictionary/fraud (defining fraud as "intentional perversion of truth in order to induce another to part with something of value or to surrender a legal right.")

Defendants offered no evidence showing the alteration of the children's "home" address for purposes of school enrollment was a "substantive fact" material to Ms. Brockenberry's eligibility.  They offered no evidence showing they relied on the NHPS school enrollment records to provide assistance to Ms. Brockenberry or that such reliance on the caused them to provide assistance to the Brockenberrry family for which they were not eligible.  They offered no proof that Ms. Brockenberry ever received *any* Section 8 assistance to which she was not entitled.

Defendants' failure to meet their burden of persuasion to support the termination of Ms. Brockenberry's Section 8 assistance is yet another violation of due process.

**4.  Defendants' Termination of Plaintiff's Section 8 Benefits Is Illegally and Unlawfully Based On Her Status as the Children's Non-Primary Guardian.**

Defendants did not meet their burden of persuasion regarding their claim of fraud because there has been no fraud.  The "home address" of the Brockenberry children for purposes of school enrollment is irrelevant to their eligibility for Section 8 assistance.  There is no prohibition, in the federal regulations, or in AHA's Section 8 Admin Plan, adopted pursuant to 24 C.F.R. § 982.54(a) against counting children as household members when the head of household does not have primary custody.  There is no requirement in the federal regulations or the AHA Section 8 Admin Plan, that AHA's Section 8 participants have custody of the children who reside in their unit.  Nor is there any requirement that minor children reside in Section 8 housing more than 50% of the time.  There is no written policy, in the HUD regulations or the

AHA Section 8 Admin Plan that prohibited April from listing her kids as part of her household based on the Probate Court guardianship order.

To be eligible for the Section 8 HCV Program, the applicant must be an income-eligible "family." 24 C.F.R. § 982.201(a). A "family" is a group of persons approved by the PHA consistent with 24 C.F.R. § 5.403 to reside in a unit with assistance under the program. 24 C.F.R. § 5.403 broadly defines a family as a group of persons residing together, including a family with or without children. The federal standards offer almost no guidance on counting children as household members; they only require a child who is temporarily away from the home because of placement in foster care be considered a member of the family in determining unit size. 24 C.F.R. § 982.402(b)(4).

The AHA Section 8 Admin Plan defines a "family" as "two or more persons (with or without children) regularly living together, related by blood, marriage, adoption, guardianship or operation of law who will live together…." (AHA Section 8 Admin Plan, p. 221). There is no requirement in the Admin Plan that a parent have primary custody of her children to claim them as members of her family or household. Nothing in the AHA Section 8 Admin Plan explicitly says that families can *only* be considered guardians of children if the children share their primary home address. AHA's Admin Plan *allows* parents/guardians with less than primary custody to claim the children as household members if they can document that the children will be living with the family. *See* AHA Section 8 Admin Plan at 50 ("In determining unit size, AHA will count a child who is temporarily away from the home because the child has been placed in foster care, kinship care, primary custody in the joint custody arrangements or is away at school, so long as the family can document that the child will be living with the family.")

In a well-reasoned decision, almost on all fours with the instant case, the Ohio Court of Appeals held that a Section 8 participant's listing of her children on her lease when she did not have legal custody of the children did not constitute fraud.  *Smith v. Hamilton County, Ohio*, 2007 Ohio App. LEXIS 1603 (date of judgment April 13, 2007).  The Ohio Court of Appeals found that [i]n the paperwork [the tenant] filled out with [Section 8 program, she] listed her two sons as household members. [Tenant] believed that even though she did not have legal custody of her sons, she had to list her sons as household members because they stayed with her every weekend and on holidays, and during the summer."  The Ohio Court of Appeals noted that the application nowhere asked about legal custody.

Regardless of the inequities of the hearing process, the fact remains that the entire termination process initiated by Defendant is legally unjustifiable. There is no basis for terminating the defendant from Section 8 based on her status of the children's non-primary guardian so long as the children did live with her.

C.      THE BALANCE OF EQUITIES TIPS IN FAVOR OF THE PLAINTIFF.

Faced with defendants' violation of federal statutory and constitutional law, and the undisputed irreparable harm suffered by plaintiff, there can be no question that the balance of hardships tips decidedly in favor of plaintiff.  Plaintiff is suffering – and will continue to suffer – the loss of Section 8 housing assistance necessary for her to obtain decent, safe, and sanitary housing for herself and her family, and the loss of  the opportunity to build and maintain a relationship with her teen-age children.  Plaintiff only seeks defendants' compliance with federal statutory and constitutional  law.  She has demonstrated a likelihood of prevailing on the merits of her claims.

D.    <u>GRANTING INJUNCTIVE RELIEF IS IN THE PUBLIC INTEREST.</u>

It is never in the public interest for a governmental entity to violate federal law by terminating a protected property interest in subsistence benefits using procedures that were both a violation of federal law and constitutionally deficient.  A pattern of such violations of federal law erodes respect for federal law, especially since the defendant Housing Authority receives significant federal dollars each year expressly premised on its agreement to comply with all of the basic requirements of the U.S. Housing Act, including the regulations governing hearings. This factor also favors granting a preliminary injunction.

Respectfully submitted,

**APRIL BROCKENBERRY**
**THE PLAINTIFF**

Dated: October 17, 2014          BY:          /s/ Shelley A. White
                                         Shelley A. White
                                         **(CT05727)**
                                         New Haven Legal Assistance Assoc.
                                         426 State Street
                                         New Haven, CT 06510
                                         Tel: (203)946-4811
                                         Fax: (203)498-9271
                                         Swhite@nhlegal.org
                                         Her Attorney